UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PHILLIPS 66, BAYWAY REFINERY,**<br><br>Petitioner,<br><br>v.<br><br>**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 877,**<br><br>Respondent. | Civ. No. 2:12-cv-06624 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Petitioner Phillips 66, Bayway Refinery (the "Company") filed this action against Respondent International Brotherhood of Teamsters, Local 877 (the "Union"). This matter comes before the Court on the Company's motion to confirm, in part, and vacate, in part, an August 28, 2012 arbitration award issued by Arbitrator Patrick Westerkamp, Esq. (the "Award"). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the Company's motion is **GRANTED**.

**I.     BACKGROUND**

The Company and the Union have been parties to a series of collective bargaining agreements that cover operating, mechanical, and maintenance employees at the Bayway Refinery. The collective bargaining agreement governing this dispute covered the period of April 1, 2009 to October 1, 2012 (the "CBA").

The dispute giving rise to the arbitration arose out of the Company's practice of paying Union members a higher overtime rate when they filled in for supervisors. In the ordinary course of a work week, if a supervisor was absent, the Company assigned members of the Union to fill those positions. When a Union member filling a supervisory position worked overtime, he or she was paid at a higher overtime rate called an "up rate." Pet. ¶ 6. The Union took the position that the Company either had to stop paying the "up rate" to Union members filling in for supervisors or that the Company should be required to pay the "up rate" to all Union members who worked overtime.

The CBA's dispute resolution provisions provided for an internal three-step grievance procedure, followed by arbitration. Article 20-2 of the CBA provided that the

"Union forfeits and waives its right to arbitrate a grievance if it does not . . . [n]otify the Company in writing of its intent to arbitrate . . . within sixty (60) calendar days following receipt of the Company's answer to the grievance at the third step of the grievance procedure . . . ." CBA Art. 20-2, Pet. Ex. B at 25, ECF No. 1-2. The same provision also provided that, "if the Company and the Union agree, the time limits may be extended an additional thirty (30) days." *Id.*

On March 5, 2010, the Union filed Grievance B-34-10, challenging the Company's practice of paying Union members at the "up rate." The Company denied the Grievance. On August 29, 2011, the Union was in receipt of the Company's answer to the Grievance. Sixty-six (66) days later, on November 3, 2011, the Union requested a thirty (30) day extension. The Company denied the Union's request. On December 8, 2011, one hundred and one (101) days after the Union received the Company's answer to the Grievance, the Union moved the Grievance to arbitration. The Company agreed to participate in arbitrator selection without waiving its defenses.

Once the Arbitrator was selected, the Company raised the issue of arbitrability. In a July 21, 2012 letter, the Arbitrator requested that the parties brief the issue. During the telephone conference calls leading up to the preparation of submissions to the Arbitrator, it was discussed and agreed that the sole issue to be determined under the label of arbitrability was whether the Union had timely moved the grievance to arbitration. Smith Cert. ¶ 4, ECF No. 3-2.

On August 28, 2012, the Arbitrator issued an Opinion and a two-paragraph Award. In Paragraph 1 of the Award, the Arbitrator held that Grievance B-34-10 was not arbitrable. The Arbitrator concluded that the Union missed the sixty (60) day deadline for arbitration by filing its notice of intent one hundred and one (101) days after receiving the Company's answer to the Grievance. Thus, "under the express language of Article 20, Grievance B-34-10 was not timely advanced to arbitration." Op. of Arb. at 13, Pet. Ex. A, ECF No. 1-1. After concluding that Grievance B-34-10 was not arbitrable, the Arbitrator went on to say that "one additional question merits review " because it "touches arbitrability from a 'what happens next?' vantage." *Id.* at 14. The Arbitrator stated that, "[b]y challenging multiple transactions over a prolonge[d] interval, [the Union] alleged a 'continuous violation.'" *Id.* Thus, in Paragraph 2 of the Award, the Arbitrator held that the Union "may file a new grievance advancing the same issues under a continuing violation theory." Award, Pet. Ex. A, ECF No. 1-1.

On October 19, 2012, the Company filed this action, and filed a motion to confirm, in part, and vacate, in part, the Award. On November 27, 2012, the Union filed an Answer to the Complaint.

## II.  LEGAL STANDARD

The Court has jurisdiction over this action pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.[1]

Arbitration awards are entitled to extreme deference and may only be overturned in "exceedingly narrow circumstances." *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003) (internal quotations omitted). As long as the arbitrator was even arguably applying the contract and acting within the scope of his authority, the fact that a court is convinced that he committed a serious error does not suffice to overturn his decision. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

A petitioner bears the burden of showing that an arbitration award, or any part of an award, should be vacated. *Handley v. Chase Bank*, 387 Fed. App'x 166, 168 (3d Cir. 2010). Pursuant to Section 10(a) of the FAA, a court may only vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrator;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); *Hall Street Associates, LLC v. Matel*, 552 U.S. 576, 584 (2008) ("*Hall Street*") (holding that the FAA's enumerated grounds for *vacatur* are exclusive).[2]

---

[1] The Company asserts that the Court has jurisdiction over this action pursuant to the LMRA and the Federal Arbitration Act, 9 U.S.C. § 1 ("FAA"). On February 4, 2013, long after its response to the Petition was due, the Union filed a motion to dismiss, arguing that jurisdiction in this case cannot be based on the FAA. The Union concedes that the Court has jurisdiction over this action pursuant to the LMRA. Because the Court does not need more than one source of jurisdiction, and the Union concedes that jurisdiction exists under the LMRA, the Union's untimely motion to dismiss is denied.

[2] Prior to *Hall Street,* it was widely accepted that a court could also vacate an award if the arbitrator showed a "manifest disregard for the law." *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969) (internal quotations omitted). Post-*Hall Street*, Supreme Court and Third Circuit case law have left open the question of whether the manifest disregard standard still applies. *See Rite Aid New Jersey Inc. v. UFCW*, 449 Fed. App'x 126, 129 n.3 (3d Cir. 2011) (acknowledging unsettled state of the law in the Third Circuit). Because Petitioner has not argued the manifest disregard standard, the Court need not consider it here.

### III. DISCUSSION

The Company argues that Paragraph 1 of the Award should be confirmed, and that Paragraph 2 of the Award should be vacated. The Court agrees.

Paragraph 1 of the Award should be confirmed. The Union filed its notice of intent to arbitrate one hundred and one (101) days after receiving the Company's answer to Grievance B-34-10. The Arbitrator correctly concluded that this exceeded the sixty (60) day deadline set forth in Article 20-2 of the CBA. Further, the Union's request for a thirty (30) day extension was both untimely and denied. Accordingly, the Arbitrator applied the CBA and acted within the scope of his authority in finding that Grievance B-34-10 was not arbitrable.

Paragraph 2 of the Award should be vacated. In finding that the Union could file a new grievance under a continuing violation theory, the Arbitrator exceeded his powers in two ways. First, the Arbitrator ruled on an issue that was not presented to him. *See Matteson v. Ryder Sys. Inc.*, 99 F.3d 108, 112-13 (3d Cir. 1996) ("an arbitrator has the authority to decide only the issues actually submitted"); *United Parcel Serv., Inc. v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 430*, 55 F.3d 138, 142 (3d Cir.1995) ("[A]n [arbitration] award will, of course, be enforceable only to the extent it does not exceed the scope of the parties' submission."). The sole question presented to the Arbitrator was whether Grievance B-34-10 was timely moved to arbitration under the CBA. No other grievance was before the Arbitrator. And the parties did not raise or brief the issue of a continuing violation. Second, by addressing the arbitrability of a possible, future grievance, the Arbitrator issued an advisory opinion on an issue that was not yet ripe for review. Accordingly, Paragraph 2 of the Award must be vacated.[3]

### IV. CONCLUSION

For the reasons stated above, the Company's motion is **GRANTED**. Paragraph 1 of the Award is confirmed. Paragraph 2 of the Award is vacated. An appropriate order follows.

/s/ William J. Martini  
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: February 19, 2013**

---

[3] The Court takes no position on whether the Union may file a new grievance, or on whether the transactions at issue constitute a continuing violation.